Case number 16-5255. Alina Health Services doing business as United Hospital, doing business as Unity Hospital, doing business as Abbott Northwestern Hospital at L. Appellants v. Thomas D. Price. Ms. Webster for the Appellants, Ms. Marcus for the Affiliate. Ms. Webster for the Affiliate. Ms. Webster, good morning. Good morning. My name is Stephanie Webster. I represent the Appellant Hospitals that are before the score again due to the continued procedural irregularities of the Secretary's reversal on Part C patient days in the Medicare Part A disproportionate share hospital payment calculations. Before you get started, can I ask you just so I understand how broad this case is. We're dealing with the 2012 year, right? Correct. And the rulemaking that takes effect in 2014, what years are going to be affected by this decision? Just 2012 or up to 2014 and what of those years are left that haven't been calculated? Sure. I see that there are three different categories. There's before 2004, which is governed by the Northeast Hospital case, 2013 and forward governed by the prospective rule, and then there's 2004 to 2013. Are the pre-2004 still being disputed? Not to my knowledge, no. So we're beyond 2004? We are beyond 2004, correct. How about from 2004 to when the 2013 rulemaking takes effect? Right. That is the subject of the dispute here. How many of those years? Nine years, fiscal year 2005 through 2013. So just to clarify, because they said they didn't actually put the, they had the 2007 technical amendment rule because they said, oops, we forgot to actually implement the regulatory change that we announced in 2004. So between 2004 and 2007, though, were they counting the Part C individuals in their dish calculations or not? There's a mix between 2004 and 2007. There was actually a regulatory change made in 2004 to remove the word covered from the regulation. The agency did not begin to implement the regulatory change until much later, and actually it wasn't until 2009 that the hospitals here initiated the initial litigation because it wasn't until then that the initial fractions reflecting the policy were issued. So then actually all the way up to 2009, they were, up to 2009, they were continuing to compute the fraction without counting the Part C individuals in the Medicare fraction? Correct. In 2009, the agency first issued its Part A SSI fractions for the 2007 federal fiscal year. The core question here is whether the agency can readopt the same Medicare payment standard from the now vacated 2004 rule without notice and comment rulemaking for periods prior to the 2013 prospective only rulemaking that we just discussed. The answer does not turn on whether the 2014 issuance itself is a legislative or interpretive rule or even a rule at all. The special notice and comment rulemaking provision of the Medicare Act, different in scope from the APA's, requires notice and comment to change a substantive legal standard governing payment either by rule requirement or statement of policy. In addition, the APA requires notice and comment to depart from the pre-2004 regulation that was reinstated by the vacater of the 2004 rule, and that rule includes only those days covered and paid under the Part A fee-for-service program, a category that does not include Part C Medicare Advantage plan days. The Medicare, the plain language, the structure, and the legislative history of the Medicare Act's rulemaking provision require notice and comment here. 42 U.S.C. 1395 H.H.A. 2, as I said, requires notice and comment for any rule requirement or other statement of policy that establishes or changes a substantive legal standard governing payment. When Congress enacted that provision, it incorporated the good cause exception for notice under the APA, but did not incorporate the APA's interpretive rule exception. And the text of that section expressly contemplates that an interpretive rule can make a change in substantive legal standard. So how does adjudication fit into this? That's one of the things the government relies on. They can do this by adjudication. Sure. The government's position is that the 2014 issuance was the first step in an adjudication, so not even the government can say that an adjudication has occurred here. Under the Medicare Act, in order to establish or change the substantive legal standard governing payment, notice and comment rulemaking is required. So our position would be that adjudication would not be proper here. Okay. I'm sorry. So, I mean, do we need to even address A2, given A4 in this case, the requirement that if they essentially overshoot in a prior regulation, it's not a non-logical outgrowth? They have to do notice and comment rulemaking? Our position is exactly that, that 1395 HHA 4 requires that the initial rule invalidated for a failure of logical outgrowth needs to be treated as a proposed rule, and that it can't take effect until a further opportunity for comment. So provided that provision, we don't have to interpret what substantive legal standard means when we address the adjudication question, if that one governs? Correct. That would be correct. And that is exactly the provision that the Align-1 court was looking at when it said that, but that the Medicare statute is similar to the APA hardly means it is identical, and the government has presented no reason to depart from the plain meaning of the text. The Align-1 court was evaluating that section and deciding whether there was harmless error and, you know, the proper remedy in Align-1. The legislative history, of course, to the Medicare Act also supports the requirement of notice and comment here. It was designed to fix a situation where the APA was not requiring enough rulemaking. Congress wanted to broaden the requirement to publication as regulations of significant policies. How do you define substantive legal standard? Well, substantive legal standard is not defined in the statute, but if you look at the entirety of that provision and the structure of the statute, you see that it's different from an APA legislative rule. It's not dependent on form because the statute says it could be a rule, a requirement, or a statement of policy. And it's irrelevant how closely tied the standard is to statutory language or regulatory language. In a case before the district court that actually did not assume that the APA and Medicare Act standards were the same, the district court called it a standard deployed in making a decision, and we think that that approach makes good sense. Well, it's not to say it's got to be a substantive standard. Given the state of APA law at the time this was adopted, how do we know Congress didn't mean by using that language to capture the difference between legislative and interpretive rules? Well, I think we know that, again, from looking at the language of 1395 H.H.A. 2, which indicates that a rule, requirement, or other statement of policy that establishes or changes a substantive legal standard triggers the notice and comment requirement. Right, so it has to be a substantive legal standard rule or a substantive legal standard requirement. Right, but it can come in the form of a rule, either interpretive or legislative, or it can come in the form of a requirement of some sort. Or a procedural legal standard. I mean, to me, substantive, the opposite of substantive usually is procedural. That's correct. You could view substantive as being the opposite of procedural, although I think there may be some situations where what the agency might construe as procedural would have an effect on a substantive legal standard that could therefore trigger this. That's not the case we have here, of course. It seems to me a calculation is substantive, not procedural. I suppose somebody could argue that a calculation, the fractions we're dealing with, is a procedure you use. But it seems to me that it is a calculation, a substantive standard used to figure out payment for services. Right. And we think it's helpful to look at the Northeast Hospital case on this, which found that altering the method for calculating the fractions, the dish fractions, that is, changes the legal consequences of treating low-income patients. So we think at the very least that finding a Northeast Hospital would suggest that this is a substantive legal standard here. And beyond the Medicare Act, we contend that the Administrative Procedure Act also requires notice and comment rulemaking. The 2014 issuance, which includes Part C days not paid under the Part A fee-for-service program, is inconsistent with the reinstated pre-2004 regulation. We don't need to reach that if we agree with you on the Medicare Act, though, correct? Correct. But several courts have not agreed with you on the Medicare Act. How do you explain that? Missing the text? I think that the ñ it's interesting. I mean, I think the other courts really haven't taken a deep dive into the statutory text and have one assumes that they're the same and then the other cites the one that assumed that they're the same and so on and so on. And so I do think that, you know, this issue is increasingly important after mortgage bankers. I think that there will be an increased focus in the Medicare context on what this provision really means. Do you want to briefly address the jurisdictional issue at some point that they raised about the boards? Yes, indeed. What happens if the board makes the decision you asked, so you have your final board action, but if it were a wrong-handed decision by them? I know you don't think it is, but assume the board, just assume the hypothetical, the board grants expedited judicial review, but does it for a reason that is just wrong? Well, our view is that the Secretary's Provider Reimbursement Review Board, and as its name suggests, it's a board of reimbursement experts, including non-lawyers. We believe strongly that the statute should be read to allow review regardless of whether that decision was correct. That the no authority determination has been delegated to the board and itself triggers jurisdiction, just as a failure of that board to make a decision on its own authority would trigger the availability of expedited judicial review. So do you agree or disagree with courts that have said that courts can review the board's determination that it lacks authority to decide something and grants expedited judicial review? I disagree, but that question doesn't even need to be reached because here it's so clear that the board lacked authority to review the procedural validity of the 2014 issuance. And what's the basis for saying we don't have the authority to review that question? The statute says it's a final decision of the Secretary, and so we can normally review a final decision. It's deemed to be a final decision of the Secretary, a final decision of agency action, a final decision subject to judicial review. The statute actually says that the providers shall have a right, and this statute's in the government's addendum at 2, that the providers shall have a right to obtain judicial review of any action which involves a question of law or regulation relevant to the matters in controversy whenever the board determines that it's without the authority to decide the question. And then subsequent to that decision, the providers or hospitals are entitled to review of the matters in controversy and not just the decision as to whether there was authority. Do you have a position on whether HHS under F-1 can even obtain judicial review of the PRRB? I mean, the way I read this, providers shall have the right to obtain judicial review. It doesn't say anything about the Secretary. Correct. The Secretary does not have a right to judicial review of a decision of the board. The Secretary here is saying don't even continue with this case. Wait until Alena 1, 2, or 3, whatever it is, comes before you. And they're without standing, as far as I can see, to even ask us to review the PRRB. I agree. The statute doesn't provide for the Secretary to have any ability to review a decision by the Provider Reimbursement Review Board as to its own authority. But that would put us in a conflict with the Seventh and Ninth Circuits, right? It would, yes, but there isn't a need to make that decision here. This case can be decided on the propriety of the determination that the board lacked authority. And, you know, Congress's decision to provide an expedited route to federal court is entirely consistent with its other decision to adopt special procedural protections regarding Medicare policies. There's an overall concern about hospitals' ability to plan with very limited budget and have certainty as to the rules of the road in what's a massive Medicare program in which very minute changes can have a tremendous impact on hospitals and, therefore, their communities and their patients. Thank you. If there are no further questions, I will reserve the remainder of my time for a very brief rebuttal. Well, we'll give you some more time. Thank you. Ms. Marcus? Thank you, Your Honor. I'm Stephanie Marcus from the Department of Justice, and I represent Apolli Thomas Price, Secretary of Health and Human Services. In this case, the district court got the case right on the merits, but it lacked jurisdiction to do so. And here, there is, as both the Seventh and Ninth Circuit have held, there is jurisdiction for this court to review the board's jurisdictional determination. And it's not a question of whether the government has standing to raise it respectfully. It is because it's a matter of the district court's jurisdiction. It's a threshold issue that the court is required to reach. When the providers file for judicial review under 1395.00, they are seeking review of the board's, here, its determination that this case was appropriate for expedited judicial review. And it would include what, normally, it would include what was certified for expedited judicial review. But if that determination is in error, there is no final decision on the merits here for this court to review. We can have erroneous final, we can have a final decision, even if it's erroneous. Right, it is a final decision. The EJR does make it a final decision within OO, that's right. And that's actually what gives this court authority to review the PRRB's determination. Here, though I heard counsel relying on the challenge to the 2012 fractions as the basis for expedited judicial review, that's not what they were seeking below. If you look at their petition for expedited judicial review, they were alleging that the secretary was still, basically, applying the 2004 regulation that had been vacated by this court in Alena 1. And that question, the board erred by saying expedited judicial review was proper because it had no authority to prolong the validity of that regulation. That regulation was already invalidated, so there was no binding regulation in effect on the board. Did the board have the authority, had it gone forward with this proceeding, to conclude that, in computing their 2012 payment, that the Medicare Part C individuals should not be included in the fraction? Did they have the authority to make that decision? The board had the authority to make that decision. It would have been wrong, for all of the reasons we've given on the merits in our brief, about what the meaning of entitled to benefits under Part A means, what this court... So it could ignore the 2004 rule and the 2013 rule, which I think was an effective point. This court had vacated the 2004 rule. So the secretary, as our declaration in the joint appendix shows, the secretary did not rely on that rule following this court's decision. Once the government didn't seek further review of this court's decision in Alena 1, the secretary was not relying on that rule, but this court... Anyway, but could the board have said in this case, back those Part C folks out of the Medicare fraction, notwithstanding the fact that the 2013 rule was out there as well, if I have my timing right? Yes, because that rule is prospective only, and... So they could have adopted the statutory interpretation, notwithstanding that the secretary had adopted in 2013 rule the opposite statutory interpretation. I think actually your questions are showing why the court lacks jurisdiction in this case, and why the proper case to have this reviewed is Alena 1 on the remand. Because what would have happened in that situation is if the board had held that, the board would have ruled one way or the other, and had the authority to,  And in this particular case, you actually have an administrative decision that you can look at on the exact same issue, but it wasn't in this case. And the Medicare exhaustion requirements are extremely important, and the reason for that is so that this court will have a record to review, and the way this came up, there isn't a decision in this case. However, because it's the same plaintiffs, these are the same plaintiffs as in Alena 1, all of these plaintiffs in this case were also in Alena 1, and it's the same time period, your honor, if the board had decided that, the administrator would have issued a decision just like we have in the record here, and that would be, but the providers would have the right to seek court review of that decision. And that's why the district court was right on the merits about here, under this court's decision in Northeast, which actually stated that prior to 2004, the secretary's regulations did not address the treatment of Part C. So there was no legislative rule prior to 2004, and then you combine that with Alena 1, where the rule was vacated, but this court reversed the district court order requiring the Part C days to be taken out and allowing the agency to look at the issue afresh. And so we would submit that the administrator's decision is reasonable, the secretary is perfectly under this court's precedence, the secretary can proceed by adjudication, does not have to engage in notice and comment rulemaking, but this case nonetheless should be dismissed for a lack of jurisdiction. What is your answer to the Medicare Act provision that says when you've done a regulation, whether you had to or not, once you've done a regulation and it overshoots, not a logical outgrowth, then you cannot proceed until you do further notice and comment rulemaking? Well, I think you cannot have the kind of legislative rule without proceeding by notice and comment. That's not what it says. If the secretary publishes a final regulation that includes a provision that is not a logical outgrowth, the provision shall be treated as proposed and not take effect until there's further opportunity for public comment. It doesn't have any adjectival limitations on which final regulations. But it doesn't preclude adjudication, and it doesn't preclude the secretary from... It does. It says you have to have further opportunity for public comment and a publication of the provision again in a final regulation. I don't know how that's consistent with adjudication. That's before having a legislative rule that would have the effect of a rule. It's certainly the secretary. And I think that this court, clearly in a line of one, agreed with that by saying that the district court there erred by requiring the secretary to take the Part C days out. Well, we had footnote five at the end of that decision, which raised this very provision and said that they appear to be correct, actually, about that. So I have that question. The second one is, even if you can do adjudication, can you do, let's say a formal adjudication that creates a record and explanation, as opposed to what here is loosely an informal adjudication that appears to be a mathematical computation with no explanation for anything. Your Honor, that is exactly why this court should dismiss for lack of jurisdiction, is that the secretary was precluded from making that very record. The secretary could have done exactly the same thorough discussion of the issue as it did in a line of one, had the board properly understood that it had authority to address the plaintiff's claims. So when we say dismiss for lack of jurisdiction, it just means remanding to the board, and it would go through the normal administrative process. And plaintiffs here, in this particular case, because the plaintiffs here are all parties in a line of one, they have had the opportunity to comment and to object and to submit their arguments to the agency. And that is all reflected on... Your Honor, notice and comment isn't just for the parties, it's for the public. That's right. If it's going to be a rule of general applicability and it's going to apply to more than just the plaintiffs. I mean, here, what they're challenging applies only to them and only for one year. And so that's not anything like a new policy or rule or... So your position is that you can do a substantive legal standard that determines the payment for services through the type of adjudication you did here, or would you agree it has to be a formal adjudication? Your Honor, the... The adjudication can be done. What was done here was not the creation of a substantive legal standard. But it is actually a part of an adjudication. The adjudication starts with the notice of payment determination by the contractor. And the agency determines the Medicare fraction. Then the contractor determines the Medicaid fraction. They then determine whether the hospital is entitled to a disproportionate share adjustment, and if so, how much. And then the providers have the right to appeal that, or they have the right to appeal... But they want to go back to that early step where you say the Secretary computed the Medicare fraction. Yes. And that's a substantive legal standard. It's, with all due respect, Your Honor, it's not within the... As this court, albeit not in a holding, but in Monmouth, it indicated that there is an exception for interpretive rules in the Medicare statute as well. Where is that in the text of the statute, though? That's just not there, unlike the... It's the words of the substantive legal standard. That is the word substantive legislative are used interchangeably, and courts have held that... Interpretive is usually substantive, too. But, Your Honor... I don't view those as being... It's either substantive or interpretive. I don't view those as opposite. It can be an interpretive rule that interprets a substantive standard and, therefore, potentially changes the substantive legal standard. But in this... Where am I missing? I think here the legal standard governing the scope of benefits or payment for services is not an individual computation of one that applies only to... But it's broader than that, isn't it? I mean, it's to say that these days will count, and that is a substantive legal standard, arguably, or an interpretation. It's an interpretation of the statute, which is the traditional interpretive rule. And that would... I was reading this at kind of a not even a deep dive, not even a shallow dive, just assumed it's akin to the APA on interpretive rules, but it seems to me the wording of the statute is quite a bit different on that. The type of interpretive rule I think, Your Honor, is contemplating is one which is intended to apply more broadly. It is not where you have a binary choice. Either you put the Part C days in or you take them out in the midst of doing a calculation. That wasn't a one-time. That's not going to be a one... Well, but that's what they're challenging here, Your Honor, with all due respect. And since the agency doesn't have to proceed by rulemaking at all, as this court has made abundantly clear in Catholic Health, the court didn't even get to the issue of whether the agency was retroactively applying a rule. It said, hey, you have an adjudication, and the adjudication by its nature is retroactive. And so here, this is all part of the process that can result in an adjudication. What's the purpose of this provision if everything can be done by adjudication? If the agency wants something to apply more broadly, in the sense, for example, in the 2013 rule, that now will. That is the legislative rule. I understand, but if they did everything by adjudication, they would be setting precedent, interpreting provisions of a statute, and that precedent would, therefore, then carry forward, setting, in essence, the substantive legal standard. And this provision would seem to be washed out if everything could be done by adjudication. But, Your Honor, the agency's adjudication is also subject to judicial review, and it's also technically is only binding on the parties to that adjudication. So it's different from a regulation, which is... But isn't that kind of just blinking away reality? You're not computing individualized Medicare fractions in this sense. Shall we include Part C or not? You don't say, all right, for you, we'll put Part C folks in. For you, we'll take them out. There is, behind that step, which is what this fight is all about, a cross-cutting, forward-looking, and retrospective as to this decision by the secretary. Yes or no? But it's... But, again, this court can review that in any case where the hospital properly goes through the steps of judicial review. I'm just putting it on here. This is sort of individualized. It doesn't apply to anyone else. It's not that approach. That doesn't seem accurate as to this predicate decision. Well, again, I think even assuming it were a rule, which we don't think it is, it would be the classic type. It is so far from the kind of legislative rule that is intended or one that would create a substantive effect. I mean, as we pointed out, the legislative history that plaintiffs rely on on the Medicare statute rule requirements show that Congress meant they have relied on the original bill, which didn't have this language. And courts have uniformly construed that substantive legal effect to, by inference, create the kind of exception for interpretive rules for notice-and-comment rulemaking. Which we did not in Monmouth. Right? We said we just don't really need to take a deep dive. Sorry to borrow your language. We see no reason to explore the possibility of a distinction here. So we just haven't crossed that bridge yet. Right. And I don't think you do here where there is a posted calculation on a website which applies for one year, one hospital is subject to review by the board, by the administrator. It doesn't establish substantive legal standard within the meaning of the Medicare statute. It's not a legislative rule. But you agree that once you make a decision, at least for a fiscal year, as to what's going to happen with the Part C folks in the Medicare fraction, that's not one-off. That's going to apply to every hospital that's making a dish payment for that fiscal year. You're not going to have a different answer to the Part C question. Do we count them or not? That was a cross-cutting, consistent decision, at least for this fiscal year. Well, that would generally be true, Your Honor. But one thing that we pointed out in the brief that illustrates why these fractions aren't anything like a substantive legal standard is when the Alina plaintiffs were in litigation with the Secretary, the Secretary actually computed special fractions for them because of the ongoing litigation. And for them, they took the Part C days out and waited for the administrator to issue when the administrator issued the decision in Alina 1. At that point, then the Part C days were included. But these aren't intended to be across the board. But, yes, generally, the Secretary would have consistent interpretation for a fiscal year. Any more questions? All right. Thank you. Does Ms. Webster have any time left? Okay. Why don't you take a couple minutes? Following up on Judge Millett's question, there is no question but that the fractions that were published on the website in 2014 apply nationwide to all dish hospitals, and there are no exceptions. And under the regulation governing the dish payment, the contractors and the agency are required to use those fractions. Ms. Marcus mentioned a special situation with respect to the Alina hospitals for 2010 and 2011, but that came up in the context of a discussion, probably a settlement discussion as to how we might proceed while the litigation proceeded. Ms. Marcus ignores that at the Provider Reimbursement Review Board there was a claim that the 2014 issuance itself was procedurally invalid. And in the joint appendix at 57, you can see that the board granted expedited judicial review over the question of whether the actions subsequent to the vacater by Alina 1 are legal and confirming that that was in play before the Provider Reimbursement Review Board. It's really a mystery what would happen if the government's jurisdictional challenge were accepted because not even the government had previously asserted that the board could invalidate that issuance and those fractions for procedural invalidity and require the secretary to engage in notice and comment rulemaking. The board comprised of reimbursement experts, including non-lawyers, simply just doesn't have that authority. And this is the exact kind of situation that Congress was intending to address when it adopted the expedited judicial review provision. There was concern about providers having to spend years and years and years in administrative proceedings before the board when ultimately the board didn't even have the authority to decide the ultimate question. If you win, what do you envision happening from here? Well, my hope would be that if we prevail, the secretary would then understand if we prevail on the idea that notice and comment rulemaking was required. Correct. He would have to go through notice and comment rulemaking and comply with the provisions of 1395HH in doing so. But they've already done that in the 2013 rule, right? Sure. Is that under challenge? It is under challenge, yes. All right, but they've done... Go ahead. For prison purposes, they've done it there. Are you saying there's nothing they could do retroactively as to everything up until the 2013 rule takes effect? Would that be the consequence of a rule in your favor here, that as to everything up until that rule takes effect, they've got to stick with the old practice of backing out the Part C? Correct. There is a provision that allows retroactive rulemaking in very limited circumstances in the Medicare Act. We do not believe that the agency could meet the requirements of that section, so we don't believe that they could do this. They could certainly try to go through notice. And that's why this matters? Correct, yes. How much money is involved between 2004 and 2013, roughly? Hundreds and hundreds of millions of dollars to hospitals, and that would be one of the things that would need to be addressed in the further rulemaking. Judge Millett mentioned the 2013 rulemaking. A further rulemaking would actually have to grapple with the fact that a change in policy has that significant of an impact on safety net hospitals. Right. Well, prospectively, you're probably going to lose, as you're aware, if they stick with the same position. But the point is you at least buy yourself nine years of money, which is a lot of money, right? Indeed. It's a lot of money for anybody, including these hospitals. And for just the nine hospitals that are part of this case, it's $50 million for just one year. And the government hasn't disputed that in the context of this case. And on your Medicare argument, of course, would be creating a circuit split, right? On the Medicare argument? On the notice and comment provision, HHA2. Yes. I mean, you say those other courts got it wrong, but would be. Correct. Although there isn't a decision from another circuit on 1395 HHA4. There are decisions on A2. On A2, all the decisions, or most of them, go opposite you. I'm trying to game this out. A circuit split with hundreds of millions of dollars, obviously the Supreme Court would have to likely get involved. Is the outcome for the hospitals affected in any way by whether the decision is grounded on A4 versus A2? I think that. Would that cut off some years? I think either way it would help bring this seemingly never-ending battle, at least culture, to an end. I missed what the first part of that was. Judge Millett asked if it mattered whether there was a decision based on HHA2 or A4. And I actually think either way that that would at least get closer to solving the problem for the 2004 to 2013 time range that we're talking about, that 2012 is part of. All right. Thank you. Thank you.
judges: Henderson, Kavanaugh, Millett